IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERI LOU MCKINNEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| EXTERRO, INC. and LEEDS EQUITY | § | |
| PARTNERS, L.L.C. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Jeri Lou McKinney ("McKinney" or "Plaintiff") and files this Original Complaint against Exterro, Inc. ("Exterro" or "Company") and Leeds Equity Partners, L.L.C. ("Leeds") (collectively, "Defendants" or "Company") and would respectfully show the Court the following:

## I.   THE PARTIES

1.   Plaintiff Jeri Lou McKinney is an individual who resides in Collin County, Texas.

2.   Defendant Exterro is a foreign corporation doing business in the State of Texas.

3.   Defendant Leeds is a foreign corporation doing business in the State of Texas.

## II.   JURISDICTION

4.   The court has jurisdiction pursuant to 42 U.S.C. § 2000, *et. seq*. because federal causes of action are plead under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII") and because there is diversity of citizenship between the parties and the amount in controversy is in excess of **$75,000.00**.

### III.   VENUE

5.      Venue of this action is governed by 28 U.S.C. § 1391 and is proper in the Northern District of Texas because Plaintiff was employed by Defendants in this District and this Division and the incidents giving rise to this lawsuit occurred in this District and this Division.

### IV.   SERVICE

6.      Defendant Exterro, Inc. may be served at its principal place of business, 4145 SW Watson Avenue, Suite 400, Beaverton, OR 97005.

7.      Defendant Leeds Equity Partners, L.L.C. may be served at its principal place of business, 590 Madison Avenue, 41st Floor, New York, NY 10022.

### V.   DEFENDANT'S DISCRIMINATORY AND RETALIATORY TREATMENT OF PLAINTIFF

8.      Shortly after she was hired, McKinney, although knowing that Company management was populated primarily by men, was told that she was hired, in part, because she was a woman and her hiring would make the Company's diversity numbers look better. Of the five (5) individuals reporting to her boss, Chris Johnson ("Chris J."), she was the only woman and she was also the only female Director of Sales in his territory and in the Company.

9.      Consistent with everything she experienced throughout her employment with the Company, McKinney was told, in front of other team members at a Budweiser event, "Welcome to the boys club!"

10.      Within the first few months of her being hired, McKinney learned that she and other women in the Company were being subjected to harassment and discriminatory treatment (both in terms of pay and other differential treatment from men) and that the key players (all male) in the

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 2

R:\9\0966\001\SubPldgs\Drafts\Plaintiff's Original Complaint.docx

management of the Company (including Chris J.), responded to women who plead for help or made complaints by ignoring them or by subjecting them to retaliation.

11.     Among other things, she learned that other female ex-employees had complained and gone to the CEO, Bobby Balachandran ("Bobby B."), for assistance only to discover that such complaints were ignored.  It was only after McKinney had endured, throughout 2019, repeated insults to her reputation, discrimination and retaliation that McKinney decided that her only hope was to make her complaints known to Leeds Equity, a private equity company that was at the time integrally involved in the operations of Exterro. Her reward for doing so was to be terminated.

12.     Shortly after McKinney was hired in mid-2019, her boss, Chris J., made an inappropriate, sexually suggestive comment to her. McKinney was offended.  More importantly, McKinney's response to the comment, and her actions, made it clear to Chris J. that she thought it was offensive and that she was not interested in what he was suggesting. Although he said nothing specifically, Chris J., by his reaction, clearly understood that McKinney had no interest in and was rejecting what he was suggesting.

13.     What followed thereafter were repeated instances in which Chris J. and Bobby Jahanbani ("Bobby J.") targeted McKinney and singled her out (in many respects, treating her differently from similarly situated males including the other male Directors of Sales), all obviously with the expectation that she would quit.  Among other things, they told her, in the context of one situation, never to talk to Michaelyn Seals ("Seals") in Human Resources.  Not surprisingly, when she did speak with Seals about one matter, and when she expected follow-up from Seals, there was no follow-up.

14.     Similarly, with respect to a business matter, McKinney was told during an October 2019 meeting that all communications from her about how to proceed with respect to that business matter were to go through Bobby J.  Also, not surprisingly, Bobby J. did not follow up with her

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 3

and did not provide her the promised directions on how to proceed.  The message was loud and clear. The Company was trying to set her up to fail and clearly wanted her to quit.

15.     Even worse than the discriminatory and retaliatory isolation practiced by the Company were the multiple instances in which McKinney was treated differently than similarly situated male employees.

16.     By way of some examples only, Chris J. and Bobby J.:

a.  unjustifiably second-guessed McKinney's decisions and went behind her back to deal directly with her accounts, a practice which they did not undertake with the male Directors of Sales,

b.  consciously chose, unlike their treatment of male Directors of Sales, not to publicly congratulate McKinney with any Zoho announcements for new hires or new account sales,

c.  publicly humiliated McKinney during a sales meeting, something not done to similarly-situated males, by unjustifiably ridiculing one of her selling practices (which was somewhat ironic because during the same sales meeting Bobby J., in discussing negotiation practices, stated that men and women get divorced because of the lack of appreciation),

d.  required her to allow Chris J., unlike their treatment of the male Directors of Sales, to essentially take over McKinney's territory and close deals in her territory without her involvement,

e.  permitted Chris J., contrary to the Company's agreement with McKinney with respect to handing off accounts from the prior Director of Sales, to take for himself McKinney's accounts in the Salesforce database and to stop copying

McKinney with information regarding those accounts (none of which he did

with the similarly-situated male employees who reported to him),

f.  lied to McKinney, to benefit themselves personally, regarding accounts that

were assigned to her (a practice which was not undertaken with similarly-

situated male employees), and

g.  lied to McKinney when she was hired regarding her base pay being comparable

if not more than the other Directors of Sales (the lie being established by the

fact that the male Director of Sales in the Eastern Region, with less experience

than McKinney in ediscovery, was paid $38,000 more per year in base pay than

McKinney).

17.     Notwithstanding the constant discriminatory and retaliatory treatment she had to endure, McKinney was able to perform her job well.  Consistent with this, she received no performance warnings, whether written or verbal, nor did she receive a performance improvement plan. Nevertheless, her only available avenue to stop the discrimination and the retaliation was to approach Leeds Equity and ask that they fairly investigate her complaints against Bobby J. and Chris J. and also address the unfair and discriminatory work environment for women at the Company. She did so in January of 2020.

18.     Everyone on the Company's Executive Management team, including Chris J., Bobby J., and Michelle Spencer ("Spencer") (who signed the April 22, 2020 termination letter), was fully aware of McKinney's complaints against Chris J. and Bobby J. and of her request to Leeds Equity that those complaints, including gender discrimination complaints, be investigated.

19.     When she brought her complaints to the attention of Leeds Equity, McKinney specifically spoke with Jacques Galante, a partner at Leeds, and, among other things, explained to him why she could not go to Exterro's Human Resources Department or to Exterro's CEO.  In

response, and obviously recognizing her fear of retaliation, Mr. Galante informed her, among other things, that she would not be fired because of her complaints. Unfortunately, that is exactly what happened.

20.     Following her complaint to Leeds Equity, Chris J. and Bobby J. engaged in numerous, unjustified retaliatory actions against her including, by way of example only:

   a.   withholding support for her that was provided to the other Directors of Sales,

   b.   exclusion from involvement in corporate strategies to win business,

   c.   not extending the [XYZ] contract for [John Doe],

   d.   exclusion from a Director of Sales strategy session attended by the following male employees, among others: Chris J., Bobby J., and other male Directors of Sales in the US,

   e.   exclusion from further participating in the development of a new strategy which our Client developed for Employee Change Monitor for Covid-19,

   f.   delaying assistance with pricing proposals (taking weeks instead of days) which affected our Client's ability to close business including Ocwen Financial and other corporate prospects, and

   g.   continuing to contact and deal with our Client's accounts without her knowledge or involvement.

21.     McKinney's termination, without any prior notification or legitimate justification, was, by the Company's own admission retaliatory. This is evident from the fact that her April 22, 2020 termination letter states, among other things, that "no matter what the Company did, you would not be satisfied."  Stated another way, the Company effectively was saying to McKinney that it was not going to even attempt to address her concerns; rather, it was getting rid of her because she was the epitome of a "squeaky wheel."

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 6

### VI.    FIRST CAUSE OF ACTION:  SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

22.    Pursuant to Federal law, a cause of action is pled against Defendants for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

23.    In violation of Title VII, Defendants discriminated against Plaintiff because of her sex by, among other things, harassing her, lying to her, and paying her less than similarly-situated male employees, causing Plaintiff to suffer damages within the jurisdictional limits of this Court. Defendants effectuated these discriminatory acts, by and through Chris J., Bobby J., Bobby B. and other employees.

24.    Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the EEOC dated October 29, 2020.

25.    Plaintiff has met all procedural prerequisites to bringing these sex discrimination claims.

26.    Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## VII.   SECOND CAUSE OF ACTION:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

27.   Pursuant to federal law, a cause of action is pled against Defendants for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

28.   In violation of Title VII, Defendants terminated Plaintiff because she reported sex discrimination in violation of Title VII.

29.   Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the EEOC dated October 29, 2020.

30.   Plaintiff has met all procedural prerequisites to bringing these retaliation claims.

31.   Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## VIII.   THIRD CAUSE OF ACTION: HOSTILE ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

32.   Pursuant to federal law, a cause of action is pled against Defendants for sexually hostile environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

33.   Plaintiff, while employed by Defendants, was continually exposed to a hostile work environment because of her sex, which included being regularly subject to ridicule, having

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 8

accounts removed from her, and withholding support. Despite Plaintiff's complaints Defendants took no action to remedy the hostile environment which existed. This hostile environment persisted until Plaintiff was discharged from her employment with Defendants on or about April 22, 2020.

34.     Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the EEOC dated October 29, 2020.

35.     Plaintiff has met all procedural prerequisites to bringing these retaliation claims.

36.     Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## IX.     FOURTH CAUSE OF ACTION:  SEX DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

37.     Pursuant to Texas state law, a cause of action is pled against Defendants for sex discrimination in violation of the Texas Commission on Human Rights Act. Tex. Labor Code § 21.051, et. seq. ("TCHRA"). The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

38.     In violation of the TCHRA, Defendants discriminated against Plaintiff because of her sex by, among other things, harassing her, lying to her, and paying her less than similarly-situated male employees, causing Plaintiff to suffer damages within the jurisdictional limits of this Court. Defendants effectuated these discriminatory acts, by and through Chris J., Bobby J., Bobby B. and other employees.

39.     Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("Texas Workforce Commission") on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the TWC dated December 26, 2020.

40.     Plaintiff has met all procedural prerequisites to bringing these retaliation claims.

41.     Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## X.     FIFTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

42.     Pursuant to Texas state law, a cause of action is pled against Defendants for retaliation in violation of the Texas Commission on Human Rights Act. Tex. Labor Code § 21.051, et. seq. ("TCHRA"). The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

43.     In violation of the TCHRA, Defendants terminated Plaintiff because she reported sex discrimination in violation of the TCHRA.

44.     Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("Texas Workforce Commission") on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the TWC dated December 26, 2020.

45.     Plaintiff has met all procedural prerequisites to bringing these retaliation claims.

46.    Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## XI.    SIXTH CAUSE OF ACTION: HOSTILE ENVIRONMENT IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

47.    Pursuant to Texas state law, a cause of action is pled against Defendants for sexually hostile environment in violation of the Texas Commission on Human Rights Act. Tex. Labor Code § 21.051, et. seq. ("TCHRA"). The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

48.    Plaintiff, while employed by Defendants, was continually exposed to a hostile work environment because of her sex, which included being regularly subject to ridicule, having accounts removed from her, and withholding support. Despite Plaintiff's complaints Defendants took no action to remedy the hostile environment which existed. This hostile environment persisted until Plaintiff was discharged from her employment with Defendants on or about April 22, 2020.

49.    Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("Texas Workforce Commission") on October 19, 2020. Plaintiff received a Right to Sue letter relating to these charges by letter from the TWC dated December 26, 2020.

50.    Plaintiff has met all procedural prerequisites to bringing these retaliation claims.

51.    Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Defendants' discriminatory actions, Plaintiff suffered damages within the jurisdictional limits of this Court.

## XII.   JURY DEMAND

52.     Demand is hereby made for this Court empanel a lawful jury to hear this case.

## XIII.   DAMAGES FOR MENTAL ANGUISH

53.     As a direct and proximate result of Defendant's actions or inactions and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial.  The damages for said mental anguish exceed the minimum jurisdictional requirements of this court.

## XIV.   PUNITIVE DAMAGES

54.     As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to exemplary damages within the jurisdictional limits of this court.

## XV.   PUNITIVE DAMAGES – NO CAP

55.     A plaintiff who successfully prosecutes a suit by proving malice by clear and convincing evidence can recover exemplary damages under Section 41.003(a)(2) of the Texas Civil Practice and Remedies Code.  Punitive Damages are sought for the malicious discrimination, harassment, and wrongful termination perpetrated by Defendants in this case.  Accordingly, the statutory caps are inapplicable.

## XVI.   REASONABLE ATTORNEYS' AND EXPERT FEES

56.     Per Title VII of the Civil Rights Act of 1964 and TEX. LAB. CODE 21.259, as amended, Plaintiff seeks to recover her reasonable and necessary attorneys' fees and reasonable expert fees incurred in prosecuting each of Plaintiff's Title VII and TCHRA claims.

## XVII.  <u>RESERVATION OF RIGHTS</u>

57.     The right to bring additional causes of action against and to amend this lawsuit as necessary is hereby specifically reserved.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer this petition.  Plaintiff further requests that on final trial, the Court enter judgment for Plaintiff and against Defendants, jointly and severally, and award Plaintiff the following relief:

a.     an amount in excess of the minimum jurisdictional requirements of this Court, for compensatory damages, lost compensation and benefits to trial and following trial, mental anguish damages, and punitive damages;

b.     reasonable attorneys' fees and reasonable expert fees,

c.     reasonable paralegal fees,

d.     costs of court;

e.     pre- and post-judgment interest at the highest rate allowed by law;

f.     an order revoking any license enabling Defendants to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date said judgment becomes final and unappealable; and

g.     and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**R. ROGGE DUNN**
Texas State Bar No. 06249500
E-mail:  dunn@righttowork.com

**BRYAN COLLINS**
Texas State Bar No.  04604850
E-mail:  collins@roggedunngroup.com

**MICAH B. CHAMBERS**
Texas State Bar No. 24100552
E-mail: chambers@roggedunngroup.com

**ROGGE DUNN GROUP, P.C.**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201-6629
Telephone: (214) 220-3888
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF JERI LOU
MCKINNEY**